**E-Filed 5/30/06**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LOCKHEED MARTIN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>RFI SUPPLY, INC., et al.,<br><br>Defendants.<br><br>AND RELATED CROSS ACTIONS. | Case Numbers  C 00-20002 JF (PVT)<br>C 03-04617 JF<br><br>ORDER[1] (1) GRANTING FMRC'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING RANTEC'S MOTION FOR SUMMARY JUDGMENT<br><br>[re: docket nos. 324, 339] |

## I. BACKGROUND

The instant action arises out of the accidental activation of the fire control system in Plaintiff Lockheed Martin Corporation's ("Lockheed") Large Compact Range anechoic chamber ("the LCR"), a facility that is used to test electromagnetic emissions, electromagnetic immunity, and radio frequencies associated with satellite components, on December 20, 1996. Three telescoping sprinkler assemblies ("TSAs"), designed and sold to Lockheed by Defendant and Counter-complainant ETS-Lindgren LP, successor to Rantec Power Systems Inc. ("Rantec"),

---

[1] This disposition is not designated for publication and may not be cited.

allegedly malfunctioned and caused severe water damage.

On December 20, 1999, Lockheed filed suit against Rantec, Grinnell Fire Protection Company (the company that installed the fire control system), RFI Supply, Inc., and Kidde-Fenwal Inc., alleging claims for negligence, strict products liability, and breach of implied warranties, C 00-20002 JF ("the 1999 action"). On December 6, 2000, Rantec filed a third-party complaint against Counter-Defendant Factory Mutual Research Corporation ("FMRC") and Factory Mutual Insurance Company ("FMIC"), alleging claims for negligence, equitable indemnity, and contribution. On September 24, 2001, District Court Judge Spencer Williams granted FMRC's motion for summary judgment based in part on its conclusion that the Approval Agreement entered into by Rantec and FMRC in 1991 included an indemnity provision that barred Rantec's claims against FMRC. On March 28, 2003, this Court entered judgment for FMRC. On October 20, 2004, the Ninth Circuit affirmed this Court's grant of summary judgment in favor of FMRC.

On April 18, 2003, FM Global Technologies LLC, formerly known as Factory Mutual Research Corporation, filed suit against Rantec in the Central District of California, seeking indemnification for the costs and fees incurred by FMRC in defending Rantec's third-party claims in the 1999 action. On November 10, 2004, Rantec filed a counter-complaint against FMRC and FMIC, alleging claims for fraud and unfair and deceptive business practice pursuant to Section 17200, *et seq*., of the California Business and Professions Code. FMRC's complaint and Rantec's counter-complaint, C 03-04617 JF, were transferred to this Court and consolidated with the 1999 action.

On January 5, 2006, FMRC filed a motion for summary judgment on Rantec's counterclaims for fraud, violation of Section 17200, *et seq*. of the California Business and Professions Code, and punitive damages. On March 10, 2006, Rantec filed a motion for summary judgment on FMRC's claim for indemnification. Both motions are opposed. The Court heard oral argument on both motions on May 5, 2006.

2

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id*.

## III. DISCUSSION

**A.   FMRC's Motion for Summary Judgment**

Lockheed's LCR anechoic chamber simulates outer space by creating conditions that are without light or sound. In order to achieve this effect, anechoic foam, a special material that absorbs sound, is placed on all four walls of the chamber. The state of the art facility is highly sensitive, and any imperfection in the anechoic foam is likely to produce unacceptable levels of

3

1  noise. Traditional fire sprinklers that protrude permanently from a ceiling would have interfered
2  with the LCR's anechoic features. For that reason, Lockheed chose to use TSAs, which allow for
3  full use of the chamber because they are located underneath the foam layer and telescope into the
4  chamber only in the event of a fire. Lockheed's contractor purchased TSAs for the LCR
5  anechoic chamber from Rantec.

6  Rantec, which designed and constructed anechoic chambers, designed a TSA in the early
7  1980s. Hartley Decl., Ex. 43, ¶¶ 3,4. In November, 1982, Rantec contacted FMRC, seeking
8  FMRC's approval for its TSA. *Id*., Ex. 9. FMRC "offers certification and testing services of
9  industrial and commercial loss prevention products" and "issues product standards, performs
10 testing, issues Approval Reports, and publishes a directory of approved products." Allard Decl.,
11 ¶¶ 2, 3. When a product meets FMRC's approval criteria, the manufacturer may label it with the
12 "FM APPROVED" mark, and the product will be included in FMRC's Approval Guide. *Id*., ¶ 4.

13 As described in a 1998 press release, FMRC "is an internationally recognized, nonprofit
14 organization within Factory Mutual — the world leader in property loss control engineering,
15 research and training." Hartley Decl., Ex. 8. FMIC and its subsidiaries "provide property
16 insurance, loss prevention engineering and other risk management services to large commercial
17 and industrial customers." *Id*., Ex. 3. Philip Johnson ("Johnson"), an employee in the hydraulics
18 lab at Factory Mutual Research, has testified that FMRC was "set up to provide approvals of
19 products, fire protection devices, automatic sprinklers, et cetera." *Id*., Ex. 4. Johnson explained
20 that when FMIC was underwriting a new risk, it would ensure that the fire protection was reliable
21 by having it approved by FMRC. *Id*.

22 On March 9, 1983, soon after Rantec had contacted FMRC for its approval, FMRC wrote
23 to Rantec: "In our opinion the device [TSA] shows potential as an approvable device for use in
24 fire protection systems in anechoic chambers." *Id*., Ex. 12. FMRC further explained:

> Our test program is designed to determine the integrity of your device for use in the vertical position and to generate certain data for sprinkler system design engineers. The design data is necessary so that approval can be granted without tying your device to any specific make or model of standard orifice sprinkler.
>
> We have never been approached to approve a telescoping nipple before, so,

4

therefore, we have no standard.

*Id*. On March 10, 1983, Rantec and FMRC entered into a "Proposal and Service Agreement," whereby FMRC agreed:

> to perform certain tests or services . . . by qualified personnel in accordance with sound engineering practices and conforming, as appropriate, with standard Factory Mutual procedures. . . . Upon completion of the work, Factory Mutual will provide a report or reports to Client describing the tests or services performed, and the opinions or conclusions reached as a result thereof, but such opinions or conclusions shall represent only the best judgment of Factory Mutual as to the conditions reported, and shall not constitute a warrant or other agreement with respect to such conditions or of any product. Factory Mutual reserves the right at any time in its sole judgement [sic] to change or revise its standards, criteria, methods or procedures.

*Id*., Ex. 5. The tests described by FMRC in the Proposal and Service Agreement did not involve any products other than Rantec's TSA. *Id*.

On June 18, 1985, Johnson sent a letter informing Rantec that FMRC was encountering problems in its testing of the TSAs. *Id*., Ex. 15. Johnson explained "that many automatic sprinklers are not capable of withstanding high 'g' forces. For that reason, we suggest that you contact the automatic sprinkler manufacturers to determine if they have any interest in developing a special sprinkler for use with telescoping assemblies, or would have any design suggestions to make your telescoping unit more compatible with existing sprinkler designs." *Id*. In a meeting on September 5, 1986, FMRC again suggested to Rantec "that it would be to [Rantec's] advantage to design their units in close cooperation with a sprinkler manufacturer." *Id*., Ex. 18. Carvel Moore, then the Director of Engineering for Rantec, responded that "Rantec was not in a position to undertake any type of testing or design with a sprinkler manufacturer since Rantec was not in the fire-suppression system business." *Id*., Ex. 43, ¶ 15.

Johnson has testified that FMRC tested the available sprinklers with Rantec's TSA. *Id*., Ex. 20. One sprinkler, the Viking, "totally disintegrated," and a representative of Grinnell informed Rantec that its sprinkler was not designed for this purpose. *Id*. Two sprinklers "managed to survive"—the Star Model E and the Central Model A. *Id*. Several years later, on July 30, 1997, Johnson summarized this testing:

5

Case Nos. C 00-20002 JF (PVT) and C 03-04617 JF
ORDER (1) GRANTING FMRC'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING RANTEC'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

> When FMRC first started testing telescoping sprinkler assemblies for use in anechoic chambers, we soon realized that many of the Approved automatic sprinklers were not suitable for that application. Neither the sprinkler manufacturers nor the assembly manufacturers were interested in designing a sprinkler for that purpose.
>
> Since something is better than nothing, we tested all the sprinklers Approved at that time, except for glass bulb types. . . .
>
> The sprinklers were installed in telescoping assemblies that would extend about two feet. Water at a static pressure of 125 psi was introduced into a small system by means of a quick opening valve. Any sprinkler that leaked or fell apart after its deployment was eliminated. The Star Model E and Central Model A sprinklers stood up to the test.

*Id.*, Ex. 21. On March 7, 1990, Johnson reported to a superior:

> The two Factory Mutual Research Approved automatic sprinklers that have been found to have best withstood the shock associated with the operation of telescoping sprinkler assemblies are the Central Model A and the Star Model E. There are no sprinklers specifically Approved by FMRC for use with such assemblies. There may be other sprinklers equally or better suited for installations using open sprinklers, but that area has not been investigated.

*Id.*, Ex. 22. On May 11, 1990, FMRC wrote to Rantec, informing it that FMRC had completed its testing of the TSA and that "[t]he results are satisfactory." *Id.*, Ex. 23. FMRC further wrote: "Formal Approval cannot be granted until the Approval report has been issued, and the Approval Agreement has been signed and received by Factory Mutual Research Corporation." *Id.* Rantec asserts, and FMRC does not dispute, that Rantec was not informed of the details of the testing that led to the approval of Rantec's product with Star Model E and Central Model A.

On June 24, 1991, FMRC issued its Approval Report, which covered "all the assemblies as outlined in the title page, but only when equipped with FMRC Approved Standard, SSU Sprinklers, Central Model A or Star Model E." *Id.*, Ex. 24, § 6.2. The Approval Report also states that the TSAs "discussed in this report are Approved only when anechoic chamber sprinkler system is provided with FMRC Approved Surge Suppresser." *Id.*, § 6.3. The 1991 Approval Agreement, signed by FMRC on June 24, 1991 and by Rantec on July 10, 1991, provides that: "FMRC Approval does not imply or express any warranty of any kind with respect to the Client's product or service, and FMRC assumes no responsibility for defects, failure in

6

Case Nos. C 00-20002 JF (PVT) and C 03-04617 JF
ORDER (1) GRANTING FMRC'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING RANTEC'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

service or patent infringement." Allard Decl., Ex. C, § 10.  The 1991 Approval Agreement also includes the following indemnity and hold harmless provision:

> The Client [Rantec] shall assume full responsibility for the design, material, workmanship and operation of the product or the quality of the service rendered and agrees to hold harmless and indemnify FMRC from any claims and liability to the Client or others for any kind or type of injury or damage, including without limitation, loss of earnings or profits, caused by or in any way connected with any of the services rendered by FMRC, or arising out of any defect, accident, damage or injury related to the product or service referenced herein.

*Id*., § 12.  FMRC was also involved in approving the language used in Rantec's manual for the TSAs, and Rantec's TSAs were listed in the FMRC approval guide.  *See, e.g., id.*, Exs. 27, 40.

     *a. Fraud*

FMRC moves for summary judgment on Rantec's claim for fraud on the ground that Rantec has not provided evidence for each of the elements of fraudulent misrepresentation.  In its opposition and during oral argument, Rantec argued that its fraud claim in fact is based upon fraudulent *concealment*, rather than fraudulent misrepresentation.  Because Rantec has not opposed FMRC's motion for summary judgment to the extent that Rantec's claim is based upon fraudulent misrepresentation, the Court will grant FMRC's motion with respect to this claim.

Rantec's argument that it has alleged fraudulent concealment relies upon a single sentence in its twelve-paragraph claim for fraud.  Referring to FMRC's testing of Star and Central sprinkler heads, Rantec alleges: "FMRC did not disclose those testing results."  Counter-complaint, ¶ 13.  In contrast, Rantec's claim for fraud alleges the elements of fraudulent *misrepresentation* with particularity.  Accordingly, the Court concludes that Rantec's counter-complaint alleges fraudulent misrepresentation, not fraudulent concealment.  Because Rantec might be able to withstand a motion for summary judgment on a properly pled claim for fraudulent concealment, the Court will grant Rantec leave to amend its counter-complaint in order to allege such a claim.  *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir. 1986) ("Granting leave to amend after summary judgment is thus allowed at the discretion of the trial court.").

The Court notes that FMRC, in litigating the instant action, was entitled to assume that

7

Case Nos. C 00-20002 JF (PVT) and C 03-04617 JF
ORDER (1) GRANTING FMRC'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING RANTEC'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1  Rantec's fraud claim was based on alleged fraudulent misrepresentation.  Accordingly, if Rantec
2  amends its counter-complaint to include a claim for fraudulent concealment, Rantec shall bear
3  any additional legal fees that may be incurred by FMRC as a direct result of this amendment.

4         *b. Section 17200, et seq. of the California Business and Professions Code*

5         FMRC argues that Rantec's claim under Section 17200, *et seq*. of the California Business
6  and Professions Code is time-barred.  The statute of limitations for a Section 17200 claim is four
7  years, Cal. Bus. & Prof. Code § 17208, and is not subject to the discovery rule.  *See Karl Storz*
8  *Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir. 2002)
9  ("[Plaintiff-appellant's] claims under California Business and Professions Code § 17200 *et seq*.
10 are subject to a four-year statute of limitations which began to run on the date the cause of action
11 accrued, not on the date of discovery.")  Rantec argues that Section 17204 provides that the
12 statute of limitations begins when there has been an "injury in fact."  However, this section
13 provides the requirement for standing, not for the statute of limitations.  Cal. Bus. & Prof. Code §
14 17204 ("Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court
15 of competent jurisdiction . . . by any person who has suffered injury in fact and has lost money or
16 property as a result of such unfair competition.").

17        Rantec's counter-complaint, which was filed on November 10, 2004, relates back to
18 FMRC's complaint, filed on April 18, 2003.  "'[T]he commencement of an action by a plaintiff
19 tolls the statute of limitations for any counterclaims that 'arise out of the same occurrence' as the
20 allegations of the complaint." *Burger v. Kuimelis*, 325 F.Supp.2d 1026, 1045 (N.D. Cal. 2004)
21 (citing *Sidney v. Superior Court*, 198 Cal.App.3d 710 (1988).  FMRC argues that Rantec's
22 Section 17200 claim does not "arise out of the same occurrence" as FMRC's claim for attorney's
23 fees and costs.  However, because both parties' claims arise out of the 1991 Approval Agreement
24 and the 1999 action, this Court concludes that Rantec's claim relates back to FRMC's complaint.
25 Accordingly, the effective filing date for Rantec's Section 17200 claim is April 18, 2003.

26        To the extent that Rantec's Section 17200 claim is based on events that occurred prior to
27 April 18, 1999, it is barred by the statute of limitations.  Significantly, Rantec's claim that it "was
28

8

Case Nos. C 00-20002 JF (PVT) and C 03-04617 JF
ORDER (1) GRANTING FMRC'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING RANTEC'S
MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1  fraudulently induced to enter into the Approval Agreement with FMRC" is time-barred because
2  the alleged fraudulent inducement would have occurred in or prior to 1991.  Counter-Complaint
3  ¶ 33.  Because the doctrine of delayed discovery does not apply to Section 17200 claims, Rantec
4  ignorance of the alleged fraudulent inducement prior to the law suit initiated by Lockheed does
5  not affect when the statute of limitations period expired.  *See Karl Storz Endoscopy America*, 285
6  F.3d at 857.

7  However, it is possible to construe Rantec's allegations to include a claim that FMRC's
8  role in the 1999 litigation constituted an unfair business practice.  Rantec alleges that it "was
9  fraudulently induced to enter into the Approval Agreement with FMRC and thereafter was
10 subject to suit brought on behalf of the insurance entities, including FMIC and its predecessors,
11 which own and/or controlled FMRC, and which were subrogated to the claims of Lockheed, and
12 to the present suit brought by FMGT."  Counter-Complaint ¶ 33.  While this general allegation
13 that the 1999 litigation itself constituted an unfair business practice may be enough to survive a
14 motion to dismiss based on the statute of limitations, it is not, on its own, enough to survive a
15 motion for summary judgment.  Rantec has provided no evidence that might show that FMRC
16 engaged in any unfair business practice later than the early 1990s.  Instead, the only evidence
17 Rantec cites in its opposition to FMRC's motion for summary adjudication of the Section 17200
18 claim relates to documents from or events during the early 1990s.  *See* Hartley Decl. ¶ 29, ex. 22
19 (letter dated March 7, 1990); *Id.* at ¶ 52, Ex. 45 (memorandum dated February 15, 1990); *Id.* at ¶
20 31, Ex. 24 (document dated June 24, 1991); Mawdsley Decl. ¶¶ 6-14 (describing events during
21 and documents from the early 1990s).  Accordingly, the Court concludes that Rantec has not
22 offered any evidence of an unfair business practice that would not be barred by the statute of
23 limitations, and the Court will grant FMRC's motion with respect to Rantec's claim under
24 Section 17200.

25    *c.  Punitive damages*

26 Having concluded that it will grant FMRC's motion with respect to both claims, the
27 Court need not reach the issue of punitive damages.

28

**B.      Rantec's Motion for Summary Judgment**

Pursuant to the 1991 Approval Agreement, FMRC seeks recovery from Rantec of costs and fees associated with defending against counterclaims brought against it by Rantec in the 1999 action.  In its First Amended Answer ("FAA") to Rantec's counterclaims, FMRC asserted a defense based on the indemnity and hold harmless provision of the 1991 Approval Agreement.  FMRC's FAA also included a boilerplate request for attorney's fees,[2] but FMRC did not file a counter-complaint for attorney's fees pursuant to the 1991 Approval Agreement.  Rantec now moves for summary judgment on the grounds that (1) by failing to assert a counterclaim for attorney's fees and costs pursuant to the 1991 Agreement, FMRC waived this claim, (2) FMRC's claim for attorney's fees and costs is barred by res judicata, and (3) the claim lacks merit.

The 1991 Approval Agreement provides in relevant part:

> The Client [Rantec] shall assume full responsibility for the design, material, workmanship and operation of the product or the quality of the service rendered and agrees to hold harmless and indemnify FMRC from any claims and liability to the Client or others for any kind or type of injury or damage, including without limitation, loss of earnings or profits, caused by or in any way connected with any of the services rendered by FMRC, or arising out of any defect, accident, damage or injury related to the product or service referenced herein.

Allard Decl., Ex. C.  In FMRC's 2001 motion for summary judgment, FMRC argued that this provision barred Rantec's claims for negligence, equitable indemnity, and contribution, without regard to any possible finding of negligence on the part of FMRC.  The district court granted FMRC's motion for summary judgment, and entered final judgment on March 28, 2003.  FMRC did not file a motion pursuant to Federal Rule of Civil Procedure 54 for attorney's fees.  The Ninth Circuit affirmed the grant of summary judgment for FMRC on October 20, 2004.

*a.  Compulsory Counterclaim*

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence

---

[2] "WHEREFORE, FMRC requests that the Court deny all of the relief sought by RANTEC for the reasons described in this First Amended Answer, and dismiss RANTEC's Third-Party COMPLAINT with prejudice and award FMRC the costs of suit, its *attorneys' fees*, and any other relief the Court finds just and proper."  FAA, p. 8 (emphasis added).

of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a); *see also Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 854 (9th Cir. 1981) ("The purpose of requiring a defendant to assert his claim as a counterclaim in a pending action is 'to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.'") (citing *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60 (1962)).

The parties disagree as to whether FMRC's claim of indemnity for attorney's fees and costs arises out of the same transaction or occurrence that was the subject matter of the 1999 action. FMRC contends that the transaction or occurrence that was the basis of Rantec's third-party complaint in the 1999 action was the malfunction of Rantec's TSAs in Lockheed's LCR anechoic chamber.[3] Rantec contends, however, that FMRC is attempting to litigate issues in the present action that were litigated in the 1999 action, in which FMRC successfully argued that the indemnity provision of the 1991 Approval Agreement barred Rantec's claims for negligence, indemnity and contribution against FMRC.

FMRC argues that Federal Rule of Civil Procedure 13(a) does not apply to its affirmative defenses because this Rule applies to a claim only if it "arises out of the transaction or occurrence *that is the subject matter of the opposing party's claim*" (emphasis added). Rantec argues that a counterclaim may be compulsory if it arises out of an affirmative defense, citing *Competitive Technologies v. Fujitsu Ltd.*, 286 F.Supp.2d 1118, 1139 (N.D. Cal. 2003) ("The Court concludes

---

[3] "Rantec's third-party claims against Factory Mutual, Allendale and IRI for negligence, indemnity and contribution involve the same operative facts as the claims filed by Lockheed against Rantec in the original action. Lockheed alleges that Rantec negligently designed, manufactured, and sold the telescoping sprinkler assemblies installed in Lockheed's [LCR anechoic chamber]. through discovery, reliable evidence has come to light showing that Factory Mutual, Allendale and IRI each took an active role in the design, testing and approval of the fire suppression system in Lockheed's LCR chamber, including the telescopic sprinkler deployment system." Johnson Decl., Ex. A ("Memorandum of Points and Authorities in Support of Rantec's Motion for Leave of Court to File Third-Party Complaint against Factory Mutual Research Corporation, Allendale Mutual Insurance Company, and Industrial Risk Insurers for Negligence, Indemnity and Contribution").

11

Case Nos. C 00-20002 JF (PVT) and C 03-04617 JF
ORDER (1) GRANTING FMRC'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING RANTEC'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1  that counterclaims should be considered compulsory when they are based on the same
2  'transaction or occurrence' as the plaintiff's causes of action *and* the affirmative defenses
3  asserted in the action." *Id*. at 1139. However, the Eastern District of California has expressly
4  declined to follow *Competitive Technologies*:

> Defendant's argument that its counterclaims are compulsory because they are related to its affirmative defense of off-set is not persuasive. Defendant cites a district court case to support its argument that its counterclaims should proceed because they are based on similar evidence and issues to be addressed on its off-set affirmative defense. *Competitive Technologies v. Fujitsu Ltd.*, 286 F.Supp.2d 1118, 1139 (N.D.Cal.2003). *Competitive Technologies* cites no Ninth Circuit authority supporting this principle and has not been cited by any other courts in support of this principle. Furthermore, the facts in Competitive Technologies, which involved patent infringement issues and which were highly involved and complex, are not analogous to the facts at issue here.

*Sparrow v. Mazda American Credit*, 385 F.Supp.2d 1063, 1069 n.3 (E.D. Cal. 2005). In a case involving facts similar to those in *Sparrow*, the Northern District of California has followed *Sparrow*:

> Defendant Western's second distinction based on its affirmative defense of setoff is not persuasive. Defendant Western has failed to cite any case supporting its argument that its counterclaim should proceed because it is based on the same evidence and issues to be addressed by its affirmative defense. In addition, the *Sparrow* court, addressing this exact issue did not find the argument persuasive and held the counterclaim permissive.

*Campos v. Western Dental Services, Inc.*, 404 F.Supp.2d 1164, 1169 n.3 (N.D. Cal. 2005). Finding *Competitive Technologies* and *Campos* persuasive, this Court concludes that FMRC's claim for attorney's fees and costs was not a compulsory counterclaim relating to its affirmative defense of indemnity in the 1999 action.

    b. Res Judicata

    In the alternative, Rantec argues that FMRC's claim is barred by the doctrine of res judicata. However, Rantec has waived the affirmative defense of res judicata by failing to assert it previously. Federal Rule of Civil Procedure 8(c) requires that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . and any other matter constituting an avoidance or affirmative defense." Res judicata, or claim preclusion, "is an affirmative

Case Nos. C 00-20002 JF (PVT) and C 03-04617 JF
ORDER (1) GRANTING FMRC'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING RANTEC'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1  defense which may be deemed waived if not raised in the pleadings." *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995) (citing *Kern Oil v. Tenneco*, 840 F.2d 730, 734-35 (9th Cir.1988). Accordingly, the Court concludes that FMRC's claim is not barred by res judicata.

      *c. Merits of FMRC's claim for attorney's fees and costs*

Rantec argues, also in the alternative, that summary judgment should be granted in its favor because FMRC's claim for attorney's fees and costs is without merit. Rantec relies on *Varco-Pruden, Inc. v. Hampshire Construction Company*, 50 Cal.App.3d 654, 660 (1975), in which the court observed that, "[o]rdinarily, indemnity connotes liability for derivative fault." However, "this general rule does not apply if the parties to a contract use the term 'indemnity' to include direct liability as well as third party liability." *Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 555 (2004); *see also Myers Building Industries, Ltd. v. Interface Technology, Inc.*, 13 Cal.App.4th 949, 968 (1993) ("An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract.").

This Court and the Ninth Circuit have previously held that the indemnity and hold harmless provision of the 1991 Approval Agreement applied to claims brought by Rantec against FMRC. Rantec contends that these previous holdings are not controlling on the issue of attorney's fees and costs. However, without respect to whether the previous holdings are controlling, the terms of this provision provide for the possibility of third-party liability:

> The Client [Rantec] shall assume full responsibility for the design, material, workmanship and operation of the product or the quality of the service rendered and agrees to hold harmless and indemnify FMRC from any claims and liability *to the Client or others* for any kind or type of injury or damage, including without limitation, loss of earnings or profits, caused by or in any way connected with any of the services rendered by FMRC, or arising out of any defect, accident, damage or injury related to the product or service referenced herein.

Creason Decl., Ex. C (emphasis added). Accordingly, this Court concludes that the indemnity and hold harmless provision allows for third party liability.

*d. FMRC's request for the Court to enter summary judgment* sua sponte

FMRC requests that this Court enter partial summary judgment on the issue of liability in its favor *sua sponte*, leaving the issue of damages to be determined at a later stage of the proceeding. "Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment *sua sponte* against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'" *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.1982)). Rantec responds that FMRC's claim for attorney's fees and costs is subject to Rantec's counterclaims seeking the rescission of the 1991 Approval Agreement. Additionally, Rantec argues that FMRC has not established that its claim for attorney's fees and costs, which FMRC argues was not mature at the time it alleged its affirmative defenses in the 1999 action, is now "mature."

The Court is concerned that considering whether to grant summary judgment on the issue of liability *sua sponte* would not provide adequate notice to Rantec. Accordingly, the Court will deny FMRC's request to do so.

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that FMRC's motion for summary judgment is GRANTED. Rantec may file any amended complaint to include a claim for fraudulent concealment within thirty (30) days after service of this order. If Rantec so amends, it shall bear any legal fees that may be incurred by FMRC as a direct result of this amendment.

IT IS FURTHER ORDERED that Rantec's motion for summary judgment is DENIED.

DATED: May 30, 2006

_____
JEREMY FOGEL
United States District Judge

1  This Order has been served upon the following persons:

2  Elaine M. Adam             emadam@rkmc.com, geross@rkmc.com

3  Stephan A. Barber          sbarber@ropers.com, blangston@ropers.com

4  J. Cross Creason           jcc@dillinghammurphy.com

5  Margaret M Drugan          mmdrugan@rkmc.com, biberinger@rkmc.com

6  Randy W. Gimple            rgimple@ccplaw.com

7  Patrick J. Hagan           pjh@wirepaladin.com, cap@wirepaladin.com

8  Edward E. Hartley          eeh@dillinghammurphy.com

9  Scott Gregory Johnson      sgjohnson@rkmc.com,

10 Alice K. Loh               akl@dillinghammurphy.com

11

12 R. Wardell Loveland
   Coddington Hicks & Danforth
13 555 Twin Dolphin Dr Ste 300
   Paragon Ctr Redwood Shores
14 Redwood City, CA 94065

15 Jennifer A. Stewart
   Long & Levit LLP
16 465 California Street
   5th Floor
17 San Francisco, CA 94104

18 Theodore C. Zayner
   777 San Marin Dr. #SMI-A18
19 Novato, CA 94998-0001

20

21

22

23

24

25

26

27

28

15

Case Nos. C 00-20002 JF (PVT) and C 03-04617 JF
ORDER (1) GRANTING FMRC'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING RANTEC'S MOTION FOR SUMMARY JUDGMENT
(JFLC1)